# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

# 05  11108 DPW

C.A. No. _____

| | |
|---|---|
| Acushnet Company, a Delaware Corporation, § § § | |
| § **COMPLAINT** | |
| Plaintiff, § | |
| § **FILED UNDER SEAL PURSUANT** | |
| v. § **TO 15 U.S.C. § 1116** | |
| § | |
| City Sports, Inc., a Massachusetts corporation, John and Jane Does 1-100 and XYZ Corporations 1-100, § § § | |
| § | |
| Defendants. § | |

MAGISTRATE JUDGE Alexander

RECEIPT # _____ 64562
AMOUNT $ 250
SUMMONS ISSUED N/A
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____
DATE 5/27/05

Plaintiff, Acushnet Company ("Plaintiff" or "Acushnet"), files this Complaint and states as follows:

## JURISDICTION AND VENUE

1.    This is an action for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act"), and for trademark counterfeiting and infringement,  trade name infringement, unfair competition, dilution and unfair and deceptive acts and practices under the laws of the Commonwealth of Massachusetts.

2.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.   This Court has jurisdiction over Acushnet's claims for trademark counterfeiting and infringement, trade name infringement, unfair competition, dilution and unfair and deceptive acts and practices under the laws of the Commonweath of Massachusetts pursuant to 28 U.S.C. § 1367.

3.    This Court has personal jurisdiction over Defendants in that they do business and/or reside in the Commonwealth of Massachusetts.

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 in that the defendants are entities or individuals, which reside in this District and/or are subject to personal jurisdiction in this District.  Moreover, a substantial part of the events or omissions giving rise to the claims occurred in this District and important and relevant books and records are located in this District.

## THE PARTIES

5.    Plaintiff, Acushnet,  is a corporation, organized and existing under the laws of the State of Delaware, having its principal place of business in the Commonwealth of Massachusetts.

6.    City Sports, Inc., a Massachusetts corporation having its principle place of business at 64 Industrial Way, Wilmington, Massachusetts.

7.    Upon information and belief, Defendants, including various individuals and entities conducting business at various locations in Massachusetts including those individuals who purchased Defendant's goods for distribution from and through this District throughout the United States, and as yet to be identified various JOHN DOES and JANE DOES are present and/or doing business in Massachusetts and subject to the jurisdiction of this Court.   The identities of the various John Doe and Jane Doe defendants are not presently known and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available (each "Doe" and collectively "Does").

8.    Upon information and belief, Defendants, the XYZ COMPANIES, through their agents, servants, and employees are present and/or doing business in the Commonwealth of Massachusetts and are, or shall be, subject to the jurisdiction of this Court.  The identities of such Defendants are not presently known and the Complaint herein will be amended, if appropriate, to include the names of the actual XYZ

2

Companies, Defendants when such information becomes available (each a "Defendant Company" and collectively, "Defendant Companies").    The parties identified in paragraphs 5 through 8 are hereinafter collectively referred to as "Defendants."

## BACKGROUND FACTS

### Acushnet Trademarks

9.    Acushnet is the world leader in golf ball and golf club technology and sales.  Acushnet owns numerous trademarks (including the world famous TITLEIST® trademark) and patents and other intellectual property throughout the world relating to its golf balls, golf club, golf accessories, and related services.

10.    Acushnet is the world's largest manufacturer and supplier of golf equipment, including, in particular, golf balls marketed under the core trademark TITLEIST®.  The golf balls marketed under the TITLEIST® name and trademark are Acushnet's best known products. The TITLEIST® golf ball model designated PRO V1® is the most successful golf ball in all of Acushnet's (as well as the golf industry's) history, and has been the number one selling golf ball in the United States combined on-course and off-course channels since February 2001, following its introduction in November 2000.[1]   Acushnet has spent hundreds of millions of dollars on research, development and marketing of TITLEIST® golf balls, in particular its PRO V1® golf ball (the "Titleist Products").

11.    Acushnet owns a host of federally registered and applied for trademarks, for *inter alia,* golf balls, golf club and golf accessories as shown respectively in Exhibits A annexed, including:

| | | |
|---|---|---|
| TITLEIST | Reg. No. 316, 118 | Dated: August 14, 1934 |
| TITLEIST | 934,406 | May 23, 1992 |
| TITLEIST (script) | 1,155,766 | May 26, 1981 |
| TITLEIST (script) | 1,601,034 | June 12, 1990 |
| PRO V1 | 2,806,919 | January 20, 2004 |

---

[1]   Acushnet planned to introduce the PRO V1 ball in March 2001, but because of early success on the professional tours, demand was so great Acushnet brought the balls to market months earlier.

3

12. These registrations are valid, unrevoked and uncancelled and many have achieved incontestable status. Acushnet also owns valid and subsisting common law rights to many of its trademarks listed, including TITLEIST® and PRO V1®, as a result of its extensive, continuous and exclusive use of these marks throughout the United States and the world to identify its golf balls, golf club and golf accessories.

13. The TITLEIST® PRO V1® is among the most distinct and recognizable models of golf balls offered by Acushnet under the TITLEIST® brand. The trademark designating the model are found on the side of each genuine TITLIST® golf ball and are often known as "side stamps".

14. Acushnet is also the owner of the entire right, title and interest in and to various trade names including "Acushnet" and "Titleist," as well as the Model Side Stamp trademarks which have been used to identify Acushnet's various products in the United States. (Acushnet's collective body of trademarks and trade names for the brand TITLEIST are hereinafter referred to as the "Titleist Marks").

15. The golf balls produced under the Titleist Marks are innovative and offer particular and consistent performance, including distance, spin, feel, dispersion, control, flight qualities (e.g., trajectory), roll characteristics, durability and appearance.

16. Each golf ball produced by Acushnet has carefully balanced components that work together as a system to ensure consistent excellent performance. The various components include, for example, a core, sometimes another inside layer around the core, a cover (which contains dimples of varying shapes, patterns, depths and styles), a highly specialized coating and the Titleist Marks, including the model side stamps.

17. The specific performance characteristics of Acushnet's golf balls are produced by, among other things, highly distinctive dimple patterns and core, casing, winding, mantel and/or cover constituents, as well as specific combinations of the same. Consumers come to know the characteristic and different TITLEIST golf balls and because of the uniqueness of the different balls and their characteristics consumers often

4

purchase exclusively one or another model of the TITLEIST balls. These characteristics are precisely the reason the PRO V1 has become the best selling golf balls in the history of golf and remains today.

18. Acushnet maintains extremely high levels of product quality and customer support. Its production facilities are equally high in performance and output, and manufacture tens of millions of golf balls annually to the closest of tolerances and unmatched color, performance and durability. These efforts include, for example, x-rays of many golf balls, and a huge investment in sophisticated, computer driven inspections systems that compare the exterior appearance of each golf ball to that of the applicable manufacturing standard, resulting in the most exacting quality control standards in the industry. Acushnet has spent and continues to spend hundreds of millions of dollars on both research and development, as well as on quality control, in order to maintain its technological edge, brand value, brand equity and customer relations, including for example, the creation and reliance upon a sophisticated, patented computer and camera testing system that measures ball speed, launch angle and spin rate.

19. In addition to the marking on Acushnet's golf balls and packaging, Acushnet has gone to great lengths to help consumers choose the correct golf ball for their golf games by making available golf ball selection algorithms in several forms, including a patented Golf Ball Fitting System made available to consumers at no cost in CD-ROM form or via the Internet. Acushnet's "Science Vans" tour the United States, hosting demonstration days at locations around the country to help consumers select the correct golf ball and club equipment for their games. Acushnet regularly prepares and circulates product information booklets illustrating and describing the various qualities and characteristics of each model. These product information booklets, in combination with charts highlighting various product features placed at the point of sale and on Acushnet's web-site, as well as experienced Acushnet dealers, help its end users purchase the correct model of the TITLEIST golf balls for their particular level and style of play.

20. On account of the aforedescribed use, promotion and publicity, the Titleist Marks have acquired enormous value, and inestimable goodwill, and have become

5

extremely well-known and famous to the consuming public and trade as identifying and distinguishing a source of high quality products (Acushnet's products using the Titleist Marks are hereinafter referred to as the "Titleist Products").

## Defendants' Unlawful Acts

21.     Defendants, without authorization or license from Acushnet, have willfully and intentionally used, reproduced and/or copied one or more of the Titleist Marks in particular the TITLEIST and PRO V1 connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell counterfeit copies of Titleist Products (the "Counterfeit Products"). Examples of the Counterfeit Products are depicted in Exhibit "B". The Counterfeit Products appear identical to Plaintiff's Titleist Products.

22.     Even though they are of significantly inferior quality and workmanship, the Counterfeit Products appear superficially similar, and in some cases superficially identical, to genuine Titleist Products, for example the products are in identical boxes, the packaging is identical. There is a concerted effort to mislead the consumer.

23.     At all relevant times and in furtherance of their infringing activities, Defendants, without authorization or license from Acushnet, have willfully and intentionally used and continue to use the Titleist Marks on the Counterfeit Products.

24.     The use by Defendants of the Titleist Mark on or in connection with the offering for sale, sale and distribution of the Counterfeit Products is likely to cause confusion, or to cause mistake or to deceive.

25.     The Counterfeit Products are not genuine Titleist Products bearing the Titleist Marks.   Acushnet did not manufacture, inspect or package the Counterfeit Products, and did not approve the Counterfeit Products for sale and/or distribution. Acushnet has inspected samples of the Counterfeit Products and determined them to be counterfeit.

6

## COUNT ONE

### (Trademark Counterfeiting and Infringement 15 U.S.C. § 1114)

26.    Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

27.    The Titleist Marks, and the goodwill of the businesses associated with them in the United States and throughout the world, are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with the products and services of the very highest quality and reputation finding their source in Acushnet.

28.    Without Acushnet's authorization or consent, and having knowledge of Acushnet's well-known and prior rights in the Titleist Marks, and the fact that Defendants' Counterfeit Products bear marks which are confusingly similar to the Titleist Marks, Defendants have manufactured, distributed, imported, exported, advertised, marketed, offered for sale and/or sold their Counterfeit Products to the consuming public in direct competition with Acushnet's sale of genuine Titleist Products, in or affecting interstate commerce.

29.    Defendants' use of copies or simulations of the Titleist Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by Acushnet, all to the damage and detriment of Acushnet's reputation, goodwill and sales.

30.    Defendants' aforesaid acts are in knowing and willful violation of Acushnet's rights under section 32 of the Lanham Act, 15 U.S.C. § 1114.

31.    As a direct and proximate result of Defendants' conduct, Acushnet has suffered damages to its valuable Titleist Marks, and other damages in an amount to be proved at trial.

32.     Acushnet has no adequate remedy at law and, if Defendants' activities are not enjoined, Acushnet will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

### (Unfair Competition and False Designation of Origin 15 U.S.C. § 1125)

33.     Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

34.     The Counterfeit Products sold by Defendants are of the same general nature and type as the Titleist Products and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

35.     By misappropriating and using the Titleist Marks and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products, and create a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such merchandise.

36.     Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, import, export, marketing, advertising, offer for sale and/or sale of the Counterfeit Products in interstate commerce creates express and implied misrepresentations that their Counterfeit Products were created, authorized or approved by Acushnet, all to Defendants' benefit and Acushnet's great damage and injury.

37.     Defendants' aforesaid acts violate of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Titleist Marks in interstate commerce, in connection with their Counterfeit Products, constitutes a false designation of origin and unfair competition.

38.     Defendants' aforesaid acts are in knowing and willful violation of Acushnet's rights under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8

39.     As a direct and proximate result of Defendants' conduct, Acushnet has suffered damages to its valuable Titleist Marks, and other damages in an amount to be proved at trial.

40.     Acushnet has no adequate remedy at law and, if Defendants' activities are not enjoined, Acushnet will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE

### (Trademark Dilution 15 U.S.C. § 1125(c))

41.     Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

42.     The Titleist Marks are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1) and have been famous marks prior to Defendants' conduct as alleged herein.    The Titleist Marks were famous before Defendants began selling their Counterfeit Products.

43.     Defendants' manufacture, distribution, import, export, marketing, advertising, sale and/or offer for sale in interstate commerce of the Counterfeit Products dilutes the distinctive quality of the Titleist Marks, and was done with the willful intent to trade on the Acushnet reputation and/or to cause dilution of the Titleist Marks.

44.     Defendants' unauthorized use of the Titleist Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such manufacture, distribution, import, export, advertising, marketing, sale and/or offer for sale was not authorized or licensed by Acushnet.

45.     Defendants' aforesaid acts are in knowing and willful violation of Acushnet's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

9

46.     As a direct and proximate result of Defendants' conduct, Acushnet has suffered damages to its valuable Titleist Marks, and other damages in an amount to be proved at trial.

47.     Acushnet has no adequate remedy at law and, if Defendants' activities are not enjoined, Acushnet will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT FOUR

### (Common Law Trademark and Trade Name Infringement)

48.     Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

49.     Acushnet has built up valuable goodwill in the Titleist Marks and trade names.     The Titleist Marks and trade names are eligible for protection under Massachusetts law, and Acushnet is the senior user of such marks and trade names.

50.     With full knowledge of the fame of the Titleist Marks and trade names, Defendants traded on the goodwill associated therewith, and misled the public into assuming a connection between the Counterfeit Products and Acushnet.

51.     Defendants' unauthorized use of the Titleist Marks and trade names on the Counterfeit Products is likely to and does permit Defendants to pass off the Counterfeit Products to the general public as genuine Titleist Products, all to the detriment of Acushnet and the unjust enrichment of Defendants.

52.     Defendants' acts of trademark and trade name infringement cause confusion and mislead and deceive the public as to the source of the Counterfeit Products, permit Defendants to pass off the Counterfeit Products as Acushnet's merchandise, and falsely suggest a connection between Defendants and Acushnet, and will continue to do so, in violation of the common law of the Commonwealth of Massachusetts.

10

53. Defendants' aforesaid acts are in knowing and willful violation of Acushnet's common law trademark and trade name rights.

54. As a direct and proximate result of Defendants' conduct, Acushnet has suffered damages to its valuable Titleist Marks, and other damages in an amount to be proved at trial.

55. Acushnet has no adequate remedy at law and, if Defendants' activities are not enjoined, Acushnet will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT FIVE

### (Common Law Unfair Competition)

56. Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

57. Acushnet has built up valuable goodwill in the Titleist Marks and the distinctive appearance of genuine Titleist Products carrying the Titleist Marks, thereby giving the Titleist Marks secondary meaning.

58. Defendants' use of the Titleist Marks is likely to and does permit Defendants to pass off their Counterfeit Products as those of Acushnet, all to the detriment of Acushnet and the unjust enrichment of Defendants.

59. Defendants, upon information and belief, with full knowledge of the fame of the Titleist Marks, intended to and did trade on the goodwill associated with the Titleist Marks and have misled and will continue to mislead the public into assuming a connection between Acushnet and Defendants.

60. Defendants' unauthorized use of the Titleist Marks has caused and is likely to continue to cause Acushnet damage by tarnishing the valuable reputation and images associated with Acushnet and its genuine Titleist Products. Defendants have further passed off Counterfeit Products as genuine Titleist Products by their false labeling

11

and misrepresentations to the consuming public, members of whom are likely to and do believe the Counterfeit Products emanate from or are associated with Acushnet.

61.    Defendants' aforesaid acts are in knowing and willful violation of Acushnet's right under the common law of the Commonwealth of Massachusetts to be free of unfair competition.

62.    As a direct and proximate result of Defendants' conduct, Acushnet has suffered damages to its valuable Titleist Marks, and other damages in an amount to be proved at trial.

63.    Acushnet has no adequate remedy at law and, if Defendants' activities are not enjoined, Acushnet will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT SIX

### (Violation of the Massachusetts Anti-Dilution Act, M.G.L. c. 110B, Section 12)

64.    Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

65.    Defendants, without Acushnet's authorization or consent, and with knowledge of Acushnet's well-known and prior rights in the Titleist Marks, has manufactured, distributed, imported, exported, marketed, advertised, offered for sale and/or sold the Counterfeit Products to the consuming public in direct competition with the sale of genuine Titleist Products.

66.    Defendants' use of counterfeits of the Titleist Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of their Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with, or are otherwise authorized by Acushnet.

12

67.    Defendants' conduct constitutes false, misleading, or deceptive acts or practices in the conduct of trade or commerce by violating, *inter alia*, the following provisions of the Massachusetts Anti-dilution Act, M.G.L. c. 110B:

(a) passing off goods or services as those of another;

(b) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(d) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; and

(e) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

68.    Defendants' willful and intentional deceptive acts and practices involve public sales activities of a recurring nature.

69.    Acushnet has no adequate remedy at law and, if Defendants' activities are not enjoined, Acushnet will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT SEVEN

### (Unfair and Deceptive Trade Practices – M.G.L. ch. 93A)

70.    Acushnet repeats and realleges the allegations of the paragraphs above as if fully set forth herein.

13

71.    Defendants are engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A §11.

72.    The acts or practices described above constitute unfair methods of competition and/or unfair or deceptive acts of practices declared unlawful by M.G.L. c. 93A §2, and were committed by the Defendants in knowing and willful violation thereof.

73.    Defendants' use of counterfeits of the Titleist Products is an unfair and deceptive trade practice.

74.    Defendants made deceptive use of the Titleist Products substantially and primarily in Massachusetts.

75.    As a direct and proximate result of Defendants' violation of M.G.L. c 93A, Acushnet has suffered, and will continue to suffer, a loss of money or property with in the meaning of M.G.L. c. 93A, §11 in an amount as yet undetermined.

## PRAYER FOR RELIEF

WHEREFORE, Acushnet respectfully requests that Defendants be cited to appear in this case, and upon final judgment, that Acushnet receive the following relief:

1.    That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

> a) From using in any manner the Titleist Marks, alone or in combination with any word or words which so resemble each said trademark as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product not Acushnet's, or not authorized by Acushnet to be sold in connection with the Titleist Marks;
>
> b) From passing off, reverse passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Acushnet, not

14

Acushnet's, or not produced under the control and supervision of Acushnet and approved by Acushnet for sale under the Titleist Marks;

c) From committing any acts calculated to cause purchasers to believe that Defendants' products are those sold under the control and supervision of Acushnet, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Acushnet;

d) From further diluting and infringing all Titleist Marks and damaging Acushnet's goodwill;

e) From shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not manufactured by or for Acushnet, nor authorized by Acushnet to be sold or offered for sale, and which bear Titleist Marks;

f) From otherwise competing unfairly with Acushnet in any manner; and

g) From assisting any other party in committing the acts described above in Paragraph 1(a)-(f).

2.      That Defendants be required to supply Acushnet with a complete list of entities from whom they purchased and to whom they distributed and/or sold products falsely bearing the Titleist Marks or products not authorized by Acushnet to be sold in connection with each of said marks;

3.      That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Acushnet a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 1 and 2 above;

4.      That Defendants account for and pay over to Acushnet profits realized by Defendants by reason of their unlawful acts herein alleged and, that the amount of damages for infringement of the Titleist Marks be increased by a sum not exceeding three times the amount thereof as provided by law;

5.      That Acushnet be awarded actual damages of in an amount to be proven at trial and punitive damages, and that such damages be increased by a sum not exceeding three times the amount thereof as provided by law by reason of Defendants' willful and intentional conduct;

6.      That Acushnet be awarded statutory damages in the amount of $1,000,000.00 per infringed mark pursuant to 15 U.S.C. § 1117(c); and

7.      That Acushnet be awarded reasonable attorneys' fees and costs, and have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act.

|  | Acushnet Company |
|---|---|
| Harley I. Lewin (HL 1819)<br>GREENBERG TRAURIG, LLP<br>200 Park Avenue, 20th Floor<br>New York, NY 10166<br>(212) 801-9200<br>(Application for admission Pro Hac Vice pending)<br><br>Katherine Compton<br>GREENBERG TRAURIG, LLP<br>State Bar No. 04652100<br>600 Three Galleria Tower<br>13155 Noel Road<br>Dallas, Texas 75240<br>Telephone: (972) 419-1250<br>Facsimile: (972) 419-1251<br>(Application for admission Pro Hac Vice pending) | By its attorneys,<br><br>Roger A. Lane, BBO#551368<br>Salo L. Zelermyer, BBO#661228<br>GREENBERG TRAURIG, LLP<br>One International Place, 20th Floor<br>Boston, MA 02110<br>Tel: (617) 310-6000<br>Fax: (617) 310-6001 |

bos-srv01\164849v01

OJS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Acushnet Company, a Delaware Corporation | City Sports, Inc., a Massachusetts Corporation, John and Jane Does 1-100 and XYZ Corporations 1-100 |

| (b) County of Residence of First Listed Plaintiff Bristol<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Middlesex<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>Roger A. Lane, BBO #551368, Salo L. Zelermyer, BBO #661228<br>Greenberg Traurig, LLP, One International Place, Boston, MA 02110<br>(617)310-6000 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1   U.S. Government<br>Plaintiff | ☒ 3   Federal Question<br>(U.S. Government Not a Party) |
| ☐ 2   U.S. Government<br>Defendant | ☐ 4   Diversity<br>(Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br> & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br> Student Loans<br> (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br> of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br> Liability<br>☐ 320 Assault, Libel &<br> Slander<br>☐ 330 Federal Employers'<br> Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br> Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br> Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury—<br> Med. Malpractice<br>☐ 365 Personal Injury —<br> Product Liability<br>☐ 368 Asbestos Personal<br> Injury Product<br> Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br> Property Damage<br>☐ 385 Property Damage<br> Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br> of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br> Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br> 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☒ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br> Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/<br> Exchange<br>☐ 875 Customer Challenge<br> 12 USC 3410 |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br> Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br> Employment<br>☐ 446 Amer. w/Disabilities –<br> Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate<br> Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards<br> Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br> & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br> Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br> or Defendant)<br>☐ 871 IRS—Third Party<br> 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br> Act<br>☐ 900Appeal of Fee Determination<br> Under Equal Access<br> to Justice<br>☐ 950 Constitutionality of<br> State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ☐ 2 Removed from<br>State Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated or<br>Reopened | ☐ 5 Transferred from<br>another district<br>(specify) | ☐ 6 Multidistrict<br>Litigation | ☐ 7 Judge from<br>Magistrate<br>Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Trademark Act of 1946, 15 U.S.C. Section 1051, et seq and Trademark Counterfeiting Act of 1984, Public Law 98-473

Brief description of cause:
Trademark infringement, counterfeiting, dilution, unfair competition and false designation.

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:    ☐ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | (See instructions):<br>JUDGE | DOCKET NUMBER |
|---|---|---|

| DATE   5/27/05 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

FOR OFFICE USE ONLY
RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____
(c)1994-2004 LegalNet, Inc.   www.USCourtForms.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only)___Acushnet Company vs. City Sports, Inc., Inc., et al

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
    rule 40.1(a)(1)).

|   | I.   | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
|---|------|---------------------------------------------------------|
| X | II.  | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases |
|   | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
|   | IV.  | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
|   | V.   | 150, 152, 153. |

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this
    district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                          YES [ ]    NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC
    §2403)

                                                                          YES [ ]    NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                          YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                          YES [ ]    NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                          YES [X]    NO [ ]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [X]       Central Division [ ]       Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
        residing in Massachusetts reside?

        Eastern Division [ ]       Central Division [ ]       Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
    submit a separate sheet identifying the motions)

                                                                          YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Roger A. Lane, BBO #551368, Salo L. Zelermyer, BBO #661228
ADDRESS Greenberg Traurig, LLP, One International Place, Boston, MA 02110
TELEPHONE NO. (617) 310-6000

Int. Cl.: 28

Prior U.S. Cl.: 22



United States Patent and Trademark Office

Reg. No. 316,118
Registered Aug. 14, 1934
Renewal Term Begins Aug. 14, 1994

10 Year Renewal

## TRADEMARK
## PRINCIPAL REGISTER

# TITLEIST

ACUSHNET COMPANY (DELAWARE CORPORATION)
333 BRIDGE STREET
FAIRHAVEN, MA, BY CHANGE OF NAME AND CHANGE OF NAME FROM ACUSHNET PROCESS COMPANY (MASSACHUSETTS CORPORATION) ACUSHNET, MA

FOR: GOLF BALLS, IN CLASS 22 (INT. CL. 28).

FIRST USE 12-20-1933; IN COMMERCE 12-20-1933.

SER. NO. 71-350,879, FILED 5-4-1934.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Nov. 8, 1994.*

COMMISSIONER OF PATENTS AND TRADEMARKS

EXHIBIT

A

Int. Cl.: 28

Prior U.S. Cl.: 22

**United States Patent and Trademark Office**

**10 Year Renewal**

Reg. No. 934,406
Registered May 23, 1972
Renewal Term Begins May 23, 1992

## TRADEMARK
## PRINCIPAL REGISTER

## TITLEIST

ACUSHNET COMPANY (DELAWARE CORPORATION)
700 BELLEVILLE AVENUE
NEW BEDFORD, MA 02742, BY MERGER AND CHANGE OF NAME FROM ACUSHNET COMPANY (MASSACHUSETTS CORPORATION) NEW BEDFORD, MA

OWNER OF U.S. REG. NO. 316,118.

FOR: GOLF EQUIPMENT COMPRISING GOLF BALLS, GOLF CLUBS, GOLF BAGS, GOLF GLOVES AND GOLF HEADCOVERS, IN CLASS 22 (INT. CL. 28).

FIRST USE 12-0-1933; IN COMMERCE 12-0-1933.

SER. NO. 72-376,815, FILED 11-23-1970.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Aug. 11, 1992.*

COMMISSIONER OF PATENTS AND TRADEMARKS



**UNITED STATES DEP** **'TMENT OF COMMERCE**
**Patent and Trademark Office**
OFFICE OF ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia    22202-3513

6 202- 042-999

REGISTRATION NO: 0934406      SERIAL NO: 72376815      MAILING DATE: 06/20/2002
REGISTRATION DATE: 05/23/1972
MARK: TITLEIST
REGISTRATION OWNER: ACUSHNET COMPANY
CORRESPONDENCE ADDRESS:

PETER D VOGL
PENNIE & EDMONDS LLP
1155 AVENUE OF THE AMERICAS
NEW YORK NY   10036

REFERRED TO ____
REC'D

JUN 2 7 2002

Pennie & Edmonds
O.K. for filing ____

# NOTICE OF ACCEPTANCE
15 U.S.C. Sec. 1058(a)(3)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-
IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 8 OF THE
TRADEMARK ACT, 15 U.S.C. Sec. 1058.

**ACCORDINGLY, THE SECTION 8 AFFIDAVIT IS ACCEPTED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# NOTICE OF RENEWAL
15 U.S.C. Sec. 1059(a)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-
IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 9 OF THE
TRADEMARK ACT, 15 U.S.C. Sec. 1058.

**ACCORDINGLY, THE REGISTRATION IS RENEWED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THE REGISTRATION WILL REMAIN IN FORCE FOR CLASS(ES):**
**022.**

EVERETT, PATRICIA
PARALEGAL SPECIALIST
POST-REGISTRATION DIVISION
(703)308-9500

PLEASE SEE THE REVERSE SIDE OF THIS NOTICE FOR INFORMATION
CONCERNING REQUIREMENTS FOR MAINTAINING THIS REGISTRATION

TMLT6 (9/99)

# REQUIREMENTS FOR MAINTAINING A FEDERAL TRADEMARK REGISTRATION

## I) SECTION 8: AFFIDAVIT OF CONTINUED USE

The registration shall remain in force for 10 years, except that the registration shall be canceled for failure to file an Affidavit of Continued Use under Section 8 of the Trademark Act, 15 U.S.C. Sec. 1058, at the end of each successive 10–year period following the date of registration.

**Failure to file the Section 8 Affidavit will result in the cancellation of the registration.**

## II) SECTION 9: APPLICATION FOR RENEWAL

The registration shall remain in force for 10 years, subject to the provisions of Section 8, except that the registration shall expire for failure to file an Application for Renewal under Section 9 of the Trademark Act, 15 U.S.C. Sec. 1059, at the end of each successive 10–year period following the date of registration.

**Failure to file the Application for Renewal will result in the expiration of the registration.**

**NO FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS WILL BE SENT TO THE REGISTRANT BY THE PATENT AND TRADEMARK OFFICE. IT IS RECOMMENDED THAT THE REGISTRANT CONTACT THE PATENT AND TRADEMARK OFFICE APPROXIMATELY ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.**

TMLT1R (9/99)



**UNITED STATES
PATENT AND
★★★★ TRADEMARK OFFICE**

6 20 7 - 04 3 - 999

Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA  22202-3514
www.uspto.gov

REGISTRATION NO: 0316118      SERIAL NO: 71/350879      MAILING DATE: 09/18/2004
REGISTRATION DATE: 08/14/1934
MARK: TITLEIST
REGISTRATION OWNER: ACUSHNET COMPANY

CORRESPONDENCE ADDRESS:
NANCY H. LUTZ, ESQ.
COLLIER SHANNON SCOTT, PLLC
3050 K Street, NW, Suite 400
Washington DC 20007-5108

# NOTICE OF ACCEPTANCE
### 15 U.S.C. Sec. 1058(a)(3)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-
IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 8 OF THE
TRADEMARK ACT, 15 U.S.C. Sec. 1058.

ACCORDINGLY, THE SECTION 8 AFFIDAVIT IS ACCEPTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# NOTICE OF RENEWAL
### 15 U.S.C. Sec. 1059(a)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-
IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 9 OF THE
TRADEMARK ACT, 15 U.S.C. Sec. 1059.

ACCORDINGLY, THE REGISTRATION IS RENEWED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE REGISTRATION WILL REMAIN IN FORCE FOR CLASS(ES):
022.

RICE, GREGGRY A
PARALEGAL SPECIALIST
POST-REGISTRATION DIVISION
(703)308-9500

PLEASE SEE THE REVERSE SIDE OF THIS NOTICE FOR INFORMATION
CONCERNING REQUIREMENTS FOR MAINTAINING THIS REGISTRATION

ORIGINAL

TMLT6A (3/2003)

## REQUIREMENTS FOR MAINTAINING A FEDERAL TRADEMARK REGISTRATION

### I) SECTION 8: AFFIDAVIT OF CONTINUED USE

The registration shall remain in force for 10 years, except that the registration shall be canceled for failure to file an Affidavit of Continued Use under Section 8 of the Trademark Act, 15 U.S.C. Sec. 1058, at the end of each successive 10-year period following the date of registration.

**Failure to file the Section 8 Affidavit will result in the cancellation of the registration.**

### II) SECTION 9: APPLICATION FOR RENEWAL

The registration shall remain in force for 10 years, subject to the provisions of Section 8, except that the registration shall expire for failure to file an Application for Renewal under Section 9 of the Trademark Act, 15 U.S.C. Sec. 1059, at the end of each successive 10-year period following the date of registration.

**Failure to file the Application for Renewal will result in the expiration of the registration.**

**NO FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS WILL BE SENT TO THE REGISTRANT BY THE PATENT AND TRADEMARK OFFICE. IT IS RECOMMENDED THAT THE REGISTRANT CONTACT THE PATENT AND TRADEMARK OFFICE APPROXIMATELY ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.**

TMLT1R (9/99)

Int. Cl.: 28

Prior U.S. Cl.: 22

## United States Patent and Trademark Office

Reg. No. 1,155,766
Registered May 26, 1981

Combined Affidavit under
Sections 8 & 15 filed in
USPTO; Notice of Acceptance
issued November 9, 1987

## TRADEMARK
Principal Register



Acushnet Company (Delaware corporation)
700 Belleville Ave.
New Bedford, Mass. 02742

For: GOLF EQUIPMENT—NAMELY, GOLF
BALLS, GOLF CLUBS AND GOLF BAGS, in
CLASS 28 (U.S. Cl. 22).

First use Dec. 20, 1933; in commerce Dec. 1933.
Owner of U.S. Reg. Nos. 316,118, 933,271 and
934,406.

Ser. No. 230,709, filed Sep. 10, 1979.

W. A. CONN, Primary Examiner

**Int. Cl.: 28**

**Prior U.S. Cls.: 22, 23, 38, and 50**

**Reg. No. 2,806,919**

## United States Patent and Trademark Office

**Registered Jan. 20, 2004**

### TRADEMARK
### PRINCIPAL REGISTER

## PRO V1

ACUSHNET COMPANY (DELAWARE COR-
PORATION)
333 BRIDGE STREET
FAIRHAVEN, MA 02719

FOR: GOLF BALLS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 12-0-2000; IN COMMERCE 12-0-2000.

SN 76-143,347, FILED 10-10-2000.

H. M. FISHER, EXAMINING ATTORNEY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System (TESS)

## Trademark Electronic Search System(Tess)

*TESS was last updated on Fri May 13 03:48:56 EDT 2005*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | TITLEIST #1 BALL IN GOLF. |
| **Goods and Services** | IC 028. US 022. G & S: GOLF BALLS. FIRST USE: 19780000. FIRST USE IN COMMERCE: 19780000 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 73756857 |
| **Filing Date** | October 11, 1988 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 20, 1990 |
| **Registration Number** | **1601034** |
| **Registration Date** | June 12, 1990 |
| **Owner** | (REGISTRANT) ACUSHNET COMPANY CORPORATION DELAWARE 333 BRIDGE STREET FAIRHAVEN MASSACHUSETTS 02719 |
| **Attorney of Record** | PETER D. VOGL |
| **Prior Registrations** | 0316118;1273662;AND OTHERS |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL-2(F)-IN PART |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20010124. |
| **Renewal** | 1ST RENEWAL 20010124 |
| **Live/Dead Indicator** | LIVE |
| **Distinctiveness Limitation Statement** | AS TO THE WORDS "#1 BALL IN GOLF" |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Thank you for your request. Here are the latest results from the <u>TARR</u> <u>web server.</u>**

**This page was generated by the TARR system on** 2005-05-16 20:43:15 ET

**Serial Number:** 73756857

**Registration Number:** 1601034

**Mark**



**(words only):** TITLEIST #1 BALL IN GOLF.

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2001-01-24

**Filing Date:** 1988-10-11

**Transformed into a National Application:** No

**Registration Date:** 1990-06-12

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 2004-01-15

---
## LAST APPLICANT(S)/OWNER(S) OF RECORD
---

1. ACUSHNET COMPANY

**Address:**
ACUSHNET COMPANY
333 BRIDGE STREET

FAIRHAVEN, MA 02719
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

**International Class:** 028
GOLF BALLS
**First Use Date:** 1978-00-00
**First Use in Commerce Date:** 1978-00-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

**Section 2(f), in part,** AS TO THE WORDS "#1 BALL IN GOLF"

**Prior Registration Number(s):**
316118
1273662

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2004-03-04 - PAPER RECEIVED

2004-01-21 - TEAS Change of Correspondence Received

2001-01-24 - First renewal 10 year

2001-01-24 - Section 8 (10-year) accepted/ Section 9 granted

2000-06-12 - Combined Section 8 (10-year)/Section 9 filed

1996-07-25 - Section 8 (6-year) accepted & Section 15 acknowledged

1996-04-26 - Section 8 (6-year) and Section 15 Filed

1990-06-12 - Registered - Principal Register

1990-03-20 - Published for opposition

1990-02-17 - Notice of publication

1989-12-21 - Approved for Pub - Principal Register (Initial exam)

1989-10-23 - Communication received from applicant

1989-08-30 - Non-final action mailed

1989-08-24 - Case file assigned to examining attorney

1989-07-17 - Communication received from applicant

1989-01-13 - Non-final action mailed

1988-12-15 - Case file assigned to examining attorney

## CORRESPONDENCE INFORMATION

**Correspondent**
PETER D. VOGL (Attorney of record)

NANCY H. LUTZ, ESQ.
COLLIER SHANNON SCOTT, PLLC
3050 K Street, NW, Suite 400
Washington DC 20007-5108

**Phone Number:** (202) 342-8400
**Fax Number:** (202) 342-8451

0018

EXHIBIT



0017



0026



0025







BOB KISLIN'S COUNTERFEIT
FROM DAVE LEWIS

GENUINE







0014



RACONET COUNTERFEIT

PURCHASED ON eBAY

GENUINE

0022



